OPINION
Defendants-Appellants Daniel E. and Melissa J. Evilsizor appeal the trial court's order enjoining them from operating a junk yard on their property in violation of R.C. § 4737.06, which requires such establishments to be licensed. The Evilsizors assert two assignments of error. First, they contend Melissa should not be bound by the injunction since it was never proven that she participated in operating the junk yard. Second, they claim the establishment they operate is a scrap metal processing facility, not a junk yard, and that they are consequently not required to obtain a license. For the reasons that follow, we overrule both assignments of error.
At the outset, we observe that the State filed two suits in this matter, one against Evilsizor's corporation Urbana Auto Salvage, Inc., Trial Court Case No. 88-CV-57, and one against Daniel and Melissa Evilsizor personally, Trial Court Case No. 89-CV-131 which are before this court as Cases No. 97-CA-26 and 97-CA-27, respectively. The two cases were consolidated for purposes of appeal by our decision and entry dated January 28, 1998. In addition, it appears from the record that at some point Evilsizor dissolved his corporation and now stands in its place for purposes of this and any further proceedings respecting these cases.
The record before us reveals that at all relevant times Daniel and Melissa Evilsizor owned and resided at 1087 East Lawn Avenue which lies in Champaign County, Ohio. Mr. Evilsizor also operated a business there, resulting in an accumulation of apparently inoperable automobiles, tires, appliances, rubber, waste, and other items on the premises. There being no necessity for a complete recitation of all that has gone on before in this case, we note simply that on July 31, 1995, the trial court found Mr. Evilsizor to be maintaining a junk yard without a license and granted the prosecutor's request for a permanent injunction against the Evilsizors, prohibiting them from operating the junk yard and ordering removal of all items defined as junk by Ohio law. Pursuant to the Evilsizors' request, the trial court issued its findings of fact and conclusions of law on November 26, 1997. The Evilsizors' timely notice of appeal followed.
 I.
The court erred in granting a temporary and permanent injunction against the defendant, Melissa J. Evilsizor.
The Evilsizors' argument under their first assignment of error, in its entirety, consists of the following forty-two words: "The Court erred in granting a temporary and permanent injunction against the Defendant, Melissa J. Evilsizor. The transcript clearly shows that Daniel Evilsizor was operating the facility. Melissa Evilsizor was not. Therefore, the injunction should not have been issued against Melissa Evilsizor." We are unpersuaded.
The trial court found that the business conducted by Daniel Evilsizor was a junk yard and that since it was being operated without a license, it constituted a nuisance. Putting aside the question whether the business was accurately characterized as a junk yard, which will be discussed under the second assignment of error, we note that "`[n]uisance' means * * * that which is defined and declared by statutes to be a nuisance * * *." R.C. § 3767.01(C). An unlicensed junk yard is statutorily recognized as a nuisance that the trial court may abate by injunction. R.C. § 4737.11. Furthermore, an owner of property where a nuisance exists is guilty of maintaining a nuisance and may be enjoined. R.C. § 3767.02(A).
The Supreme Court of Ohio has very recently stated that "R.C.3767.02, which defines the offense of maintaining a nuisance, is clear and unambiguous and does not include a requirement of knowledge, acquiescence, or participation on the part of an owner of the property deemed to be a nuisance." State ex rel. Pizza v.Rezcallah (1998), 84 Ohio St.3d 116, 122. Thus, an injunction may be issued against an owner of a nuisance even absent any actual participation by her in the creation or maintenance of the nuisance. The Evilsizors' first assignment of error is consequently without merit and is overruled.
 II.
The court erred in granting a temporary and permanent injunction against the defendant, Daniel E. Evilsizor, as Daniel E. Evilsizor was operating a scrap metal processing facility not a junk yard.
In their second assignment of error, the Evilsizors claim the trial court's finding that their business falls within the statutory definition of a junk yard instead of a scrap metal processing facility was erroneous as being against the manifest weight of the evidence. Before addressing the merits of the Evilsizors' assigned error, we observe that "[t]he issue whether to grant or deny an injunction is a matter solely within the discretion of the trial court and a reviewing court will not disturb the judgment of the trial court in the absence of a clear abuse of discretion." Danis Clarkco Landfill Co. v. Clark Cty.Solid Waste Mgt. Dist. (1995), 73 Ohio St.3d 590, paragraph three of the syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, a reviewing court will not reverse a trial court judgment as being against the manifest weight of the evidence if it is supported by some competent, credible evidence. C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. We are guided by these principles as we proceed to consider the Evilsizors' arguments under their second assignment of error.
The following portions of R.C. § 4737.05 are relevant to our analysis:
 (A) "Junk" means old or scrap copper, brass, rope, rags, trash, waste, batteries, paper, rubber, iron, steel, and other old or scrap ferrous or nonferrous materials, but does not include scrap tires * * * defined [as unwanted or discarded tires] in section 3734.01 of the Revised Code.
 (B) "Junk yard" means an establishment or place of business that is maintained or operated for the purpose of storing, keeping, buying, or selling junk. * * * "[J]unk yard" includes scrap metal processing facilities that are located within one thousand feet of the nearest edge of the right of way of a highway in the interstate or primary system.
* * *
 (D) "Scrap metal processing facility" means an establishment having facilities for processing iron, steel, or nonferrous scrap and whose principal product is scrap iron and steel or nonferrous scrap for sale for remelting purposes.
The Evilsizors seem to argue that because their business was not situated within one thousand feet of a highway or interstate, and because Mr. Evilsizor uses various methods of preparing scrap metal for resale, the trial court's decision is against the manifest weight of the evidence. While the Evilsizors correctly state the law with respect to the existence of an exemption from the licensing requirement for certain facilities located more than one thousand feet from an interstate highway or primary road, their first argument presumes their business is a scrap metal processing facility rather than a junk yard. This was found not to be so by the trial court, and we agree.
We note that nine hearings were held in this case, and extensive testimony was taken during those proceedings. It was established that, although Mr. Evilsizor had previously held a license to operate a junk yard at the premises, it had expired and no new license application had been submitted to the Champaign County auditor. A Champaign County Sheriff's deputy testified that he observed "junked cars," appliances, bicycle parts, and two buses containing unidentified items on the property. Mr. Evilsizor testified in intricate detail to the various methods he employed in preparing scrap metal for resale to other businesses. Of the businesses Mr. Evilsizor identified as buyers of his materials, most were themselves scrap metal processing facilities. Only one was a mill, and another was a broker. In addition, he has sold "hundreds if not maybe thousands of scrap batteries to be recycled," and he occasionally sells auto parts such as hubcaps to individuals for purposes other than remelting. Mr. Evilsizor also acknowledged that other wastes, such as rubber hoses, fan belts, paper, cardboard, or "just regular trash" accumulated and "piled up" at the business, and that he would periodically pay to have the debris hauled away.
This evidence alone is adequate to support the trial court's determination that the Evilsizors' business fell within the statutory definition of a junk yard. In addition, however, the trial judge also visited the site on two occasions. There he saw "various vehicles that did not appear to be in operating condition", and "a number of other items in the open areas around the buildings on the premises." His observations, in conjunction with the evidence offered at the hearings, led the trial court to conclude that the Evilsizors' business is a junk yard, not a scrap metal processing facility.[1]
As the State noted in its commendable and exceptionally well-organized brief, the record contains some competent, credible evidence that the Evilsizors were co-owners of property at which Mr. Evilsizor operated a junk yard; that in the course of the business, materials such as rubber, batteries, waste, paper, and various metals accumulated on the premises; and that most of Mr. Evilsizor's buyers were not equipped to remelt the materials purchased. As such, we find no error in the trial court's conclusion that Mr. Evilsizor's operation constituted a junk yard, not a scrap metal processing facility. This result remains the same regardless of the fact that Mr. Evilsizor used various methods of preparing materials for resale. Finally, since the business was conducted without a license, the trial court's issuance of a permanent injunction against the Evilsizors' continued operation of the junk yard was appropriate.
The second assignment of error is not well taken and is overruled.
Having found both of the Evilsizors' assigned errors to be without merit, we affirm the judgment of the trial court.
GRADY, P.J. and WOLFF, J., concur.
[1] We recognize that the trial court noted in its opinion the fact that a significant number of scrap tires had accumulated on the property. Such material, however, is specifically excluded from the statutory definition of "junk" and consequently adds nothing to a discussion of whether the place of business at which they are stored is a junk yard. Therefore, we do not consider the presence of the tires on the Evilsizors' property in our review of the trial court's determination.